Joseph M. DONLON, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

May 9, 1972.

Jay H. Conner, of Conner & Daley, Wilmington, for defendant below, appellant.

Richard H. Schliem, III, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

Joseph M. Donlon was found guilty in *Municipal Court of Wilmington* upon a charge of being unlawfully concerned in interest in lottery policy writing in violation of 11 Del.C. § 662. He appealed to Superior Court, where he was found guilty by a jury. He has appealed to this Court, charging error in several respects which we will consider individually.

I.

Appellant's first contention is that the search warrant, under which he was searched and certain evidence was discovered, was based upon an affidavit which was inadequate under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The lengthy affidavit, signed by two police officers, sets forth the receipt of a tip from a named woman, who told the officers that the appellant was using her apartment for lottery policy writing, and that she was being paid five dollars a day by him for the purpose of calling by telephone the numbers to an unknown person. Nothing is said in the affidavit concerning the reliability of the informant. During the month following receipt of the tip, according to the affidavit, the affiants "tailed" the appellant on eight different days. On each day, the appellant would visit, at regular times, certain persons who had previously been convicted or arrested for lottery or gambling charges. Three of the places visited are owned or operated by people with prior arrests on similar charges. These visits would last from two to five minutes. He was also seen in company with the informant. On two occasions, the appellant observed that he was being followed and took steps to lose his pursuers. On one of those occasions, he drove through a red light, through a funeral procession and down a one-way street the wrong way. The affidavit finally recites that the appellant had been arrested and convicted on numerous occasions for lottery policy violations.

In our opinion, this affidavit is sufficient to justify the issuance of the warrant. Even though it fails to aver reli-

ability of the informant, the additional information demonstrates the clear likelihood of her veracity. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723. The search warrant was not invalid.

## II.

■ The appellant next complains that he was denied the opportunity to inquire into the voluntariness of a statement he was alleged to have made after he had been informed of his constitutional rights by the arresting officers. His counsel asked for a *voir dire* out of the presence of the jury to explore the question of voluntariness. The request was denied. This ruling was probably erroneous, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908, but subsequent testimony showed that the error, if any, was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The officer testified that he searched the defendant and found some policy slips in his shirt pocket, whereupon defendant said "O.K., you got it, you got it there. I knew this was going to happen," but said nothing else. That statement was made by him without the officer having asked any question. There was no further question raised concerning its voluntariness; appellant denied making the statement.

■ Appellant's next point is that the police officer, while testifying, mentioned the earlier trial held in Municipal Court. He argues that the jury undoubtedly realized from that remark that he had been found guilty in the lower court, otherwise this trial would not have taken place. He suggests that the remark was made intentionally after his own counsel had deliberately avoided mentioning it. Actually, his counsel referred to a "preliminary hearing," and the officer may have intended to correct the attorney's incorrect reference; there is nothing in the record to indicate that the officer had a deliberate intent to inform the jury of the prior trial. No further reference was made to it in the testimony. State v. Reynolds, 41 N.J. 163, 195 A.2d 449 (1963), cited by the appellant, is not a comparable case. Here, as the State suggests, the matter is of such slight consequence, when considered in context, that we cannot believe that it had any substantial influence on the jury. It is of insufficient importance to require a new trial. Hutchins v. State, Del., 153 A.2d 204 (1959); Freeman v. State, Del., 242 A.2d 311 (1968).

■ Next, appellant questions the denial of a motion for mistrial predicated upon a question asked by the prosecuting attorney during cross-examination of a defense witness, who formerly was a police officer. The question was: "During your years on the vice squad, did you have occasion to deal with Joe Donlon?" Objection to the question was made and was *sustained*. On this point, the trial Court said, "Alright. Since it was objected to and the objection sustained, I don't think there is any prejudice." We agree. We do not understand how the mere asking of this question could be sufficiently serious to require a new trial, nor is there any reason to charge the prosecuting attorney with wrongful intent in asking it. The matter is not comparable to the situation in Herhal v. State, Del., 243 A.2d 703 (1968).

■ The appellant next criticizes the ruling of the trial Judge sustaining the State's objection to appellant's attempt to show that his companion at the time of his arrest was also searched and no evidence of lottery writing was found on his person. How this evidence could possibly be relevant escapes us. The ruling was correct.

■ Next the appellant contends that the Judge should have directed a verdict in his favor because there was no evidence that he had actually sold or disposed of lottery policies. This contention was properly overruled. Appellant was not charged

with selling lottery policies; he was charged with "being concerned in interest in lottery policy writing." It is not necessary to prove an actual sale by a defendant charged under § 662. State v. Turner, Del., 168 A.2d 539 (1961).

 The appellant next argues that the jury charge inadequately explained to the jury what the State was required to prove to justify a guilty verdict. If he means by this that the Court should have said that an actual sale by Donlon was required to be proven, nothing more need be said. If he means that the charge failed to include all the elements of "being concerned in interest in lottery policy writing," he is wrong.

■ The appellant's last two contentions are based upon the fact that the information charges commission of the offense on December 24, 1969, whereas the evidence, both written and oral, admittedly dealt with a period of several days prior to December 24. As to this point, he relies upon Monastakes v. State, Del., 2 W.W.Harr. 549, 127 A. 153 (1924). In that case, the defendant had been charged in separate informations with two offenses of selling drugs, one on April 11, the other on April 14. He was convicted in Municipal Court on the April 11 charge, and the other charge was dropped. On appeal in the Court of General Sessions, the State's proof showed the sale on April 14; there was no testimony about the one on April 11. The Court directed an acquittal.

We do not question the *Monastakes* decision; it concerned two specific sales on separate dates, and the State proved the wrong one. But that case has no bearing here. No doubt it is possible that a person could be concerned in interest in a single sale of a lottery policy in which event a specific date might be important; but usually, as here, the defendant has a continuing interest in the enterprise and pursues a continuing course of conduct. Such was the case here. The evidence at the trial is not limited to the precise date charged. The Court below was not in error, therefore, in instructing the jury that the State need only prove that the crime was committed on or about the date charged in the information.

### III.

To summarize, we hold that the warrant was validly issued, and that any error or combination of errors committed at the trial do not require a reversal. We accordingly affirm.